UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CYNTHIA LEWIS,<br>*Plaintiff*,<br><br>v.<br><br>S&S NUTRITION INC.,<br>*Defendant*. | ) 3:21-CV-00957 (SVN)<br>)<br>)<br>)<br>)<br>)<br>)  September 23, 2022<br>) |

**RULING AND ORDER ON DEFENDANT'S MOTION TO DISMISS**

Sarala V. Nagala, United States District Judge.

Cynthia Lewis ("Plaintiff") brings the present action against S&S Nutrition Inc., ("Defendant") alleging that Defendant filed a lawsuit in Connecticut state court against her that contained fraudulent misrepresentations and defamatory statements, causing Plaintiff to suffer injuries. Presently before the Court is Defendant's motion to dismiss the Complaint for failure to state a claim for relief. For the reasons discussed herein, the Court DIMISSES the present action for lack of subject matter jurisdiction.

    **I.  FACTUAL BACKGROUND**

The following facts alleged in the complaint are taken as true for purposes of the present motion.[1] Plaintiff has resided in and owned the property located at 1020 Old Town Road, Trumbull, Connecticut (the "Property") since October 2000. Compl., ECF No. 1 ¶ 6. Despite this, on June 1, 2020, Defendant purported to purchase the Property from an unknown entity. *Id.* ¶ 5. After completing this purported purchase, on December 12, 2020, Defendant served upon Plaintiff

---

[1] Although Defendant has not styled its motion as one that questions the Court's subject matter jurisdiction to decide this case, the Court must still apply the appropriate standard that would apply to such a motion when examining its subject matter jurisdiction *sua sponte*. When assessing a Rule 12(b)(1) motion asserting lack of subject matter jurisdiction, the Court must "take all facts alleged in the complaint as true and draw all reasonable inferences in favor of [the] plaintiff, but jurisdiction must be shown affirmatively, and the showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Morrison v. Nat'l Australia Bank, Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citation and internal quotation marks omitted), *aff'd*, 561 U.S. 247 (2010).

a "Notice to Quit Possession" which demanded Plaintiff vacate the Property on or before December 19, 2020. *Id.* ¶ 7. Plaintiff refused to do so. *Id.* ¶ 8. Though it is unclear precisely what Plaintiff did after receiving this notice, it appears that she attempted to contact Wells Fargo Bank to clear up the issues regarding her ownership of the Property. *Id.* ¶ 10. These conversations with Wells Fargo continued into March 2021.[2] *Id.*

Nevertheless, on December 22, 2020, Defendant filed a summary process eviction complaint against Plaintiff in the Bridgeport Housing Session of Connecticut state court, despite that Connecticut had an eviction moratorium in place at the time. *Id.* ¶¶ 11–12. This complaint alleged that Defendant had purchased the Property on June 1, 2020, and, according to Plaintiff, falsely asserted the Plaintiff had taken possession of the Property from Defendant pursuant to an oral lease that same day. *Id.* ¶¶ 13–15. Defendant specifically alleged that the oral lease allowed Plaintiff to reside at the Property for a rent of $2,500 per month. *Id.* ¶ 15.

A hearing was held in the eviction proceeding on March 3, 2021. *Id.* ¶ 17. At that hearing, Defendant admitted that there had in fact been no oral lease, but instead claimed than an unnamed realtor had sent Plaintiff a letter explaining Defendant's ownership of the Property and Plaintiff's ability to rent the Property. *Id.* ¶¶ 17–18. Plaintiff denies ever receiving such a letter. *Id.* ¶ 19. Regardless, apparently relying on this letter sent from a realtor, Defendant argued at the hearing that Plaintiff entered some kind of lease agreement and that she owed Defendant $17,500 in rent for the period of June 2020 through December 2020. *Id.* ¶¶ 20–21. Plaintiff argued that she owed no money to Defendant, as she was the owner of the Property and never agreed to pay anything to anyone for the ability to live in her own home. *Id.* ¶¶ 22–23. Defendant's claims were ultimately

---

[2] The Complaint alleges that the conversations were ongoing into "March 2020," but March of 2020 was before Plaintiff was served the notice to quit possession. Thus, the Court will assume "March 2020" was a typographical error and will treat the allegation as referencing March of 2021.

2

found to be lacking in credibility and the summary process eviction action was dismissed. *Id.* ¶ 26.

As a result of these events—specifically, Defendant's statements in the housing action complaint and at the hearing on March 3, 2021—Plaintiff brought the present action alleging claims of fraudulent misrepresentation and defamation. In her fraudulent misrepresentation claim, Plaintiff alleges Defendant made false statements that "were made to induce her to pay a total of $22,500 in alleged rental arrears and to cause the court to so order." Compl., ECF No. 1 ¶ 27(c). Given that Plaintiff alleges that the summary process eviction action was dismissed, and because of ambiguity in the language of the complaint, it is not entirely clear whether Plaintiff actually paid any money to Defendant.

## II.    DISCUSSION

Presently before the Court is Defendant's motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), which argues that Defendant has absolute immunity from Plaintiff's claims due to the litigation privilege. Before it can reach the merits of that motion, however, the Court must examine whether it has subject matter jurisdiction. "Federal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press." *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011). This is because "without jurisdiction the court cannot proceed at all in any cause." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). "Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Id.*; *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action"). As noted

above, the plaintiff in an action bears the burden of proving by a preponderance of the evidence that subject matter jurisdiction exists. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

In this matter, Plaintiff invokes the diversity jurisdiction of the federal courts, pursuant to 28 U.S.C. § 1332. That statute provides: "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different states." 28 U.S.C. § 1332(a). The Court's duty to examine its jurisdiction to hear a case *sua sponte* extends to examination of the amount in controversy where jurisdiction is based on diversity of citizenship. *See Nwanza v. Time, Inc.*, 125 F. App'x 346, 347 (2d Cir. 2005) (dismissing action *sua sponte* for failing to meet the requisite amount in controversy to establish diversity jurisdiction); *Boorman v. United Parcel Serv. of Am., Inc.*, 159 F.3d 1345 (2d Cir. 1998) (unpublished) (affirming *sua sponte* dismissal for lack of jurisdiction where plaintiff could not establish minimum amount in controversy for diversity jurisdiction).

There is no dispute in this case that the parties have complete diversity of citizenship, as Plaintiff is a citizen of Connecticut and Defendant is a citizen of Oklahoma. In order for the Court to have subject matter jurisdiction under § 1332, however, the amount in controversy must be greater than $75,000. 28 U.S.C. § 1332(a).

Initially, "a party invoking the jurisdiction of the federal court has the burden of proving that it appears to a 'reasonable probability' that the claim is in excess of the statutory jurisdictional amount." *Scherer v. Equitable Life Assur. Soc'y of U.S.*, 347 F.3d 394, 397 (2d Cir. 2003). "[T]his burden is hardly onerous," because the Second Circuit "recognize[s] a rebuttable presumption that the face of the complaint is a *good faith* representation of the actual amount in controversy." *Id.*

4

(emphasis added).  But where the allegations in a complaint regarding the amount in controversy are purely conclusory, they are not entitled to the "presumption of truth."  *Wood v. Maguire Auto., LLC*, 508 F. App'x 65, at *1 (2d Cir. 2013).  Accordingly, "courts in this Circuit have routinely found jurisdictional defects in complaints that merely allege that the claim exceeds the statutory jurisdictional amount."  *Siddiqui v. Rocheleau*, No. 3:18-CV-00839 (JCH), 2018 WL 6519064, at *13 (D. Conn. Dec. 11, 2018); *Baltazar v. Earth Ctr. of Maanu, Inc.*, No. 14-CV-3543 ENV LB, 2014 WL 3887717, at *2 (E.D.N.Y. July 11, 2014).

The complaint in this action fails to adequately plead the requisite $75,000 amount in controversy.  It contains three allegations regarding damages: (1) the first paragraph, which alleges in conclusory fashion that "the amount in controversy exceeds $75,000," ECF No. 1 ¶ 1; (2) paragraph 27(c), in which Plaintiff alleges that Defendant made false statements that were made to induce her "to pay a total of $22,500 in alleged rental arrears"; and (3) a *pro forma* clause at the end of each count in the complaint stating, "Plaintiff has been damaged thereby."  *Id*. ¶ 28.  Then, in the prayer for relief, Plaintiff seeks unspecified compensatory damages and punitive damages.  *Id.* at 5, ¶¶ b & c.

These allegations and the prayer for relief do not provide a sufficient basis for the Court to find that Plaintiff satisfies the minimum amount in controversy.  Plaintiff alleges that she prevailed in the underlying lawsuit on the issue of whether there was an oral lease, such that it appears she may never have paid any money to Defendant.  Even if she did pay $22,500 to Defendant, however, such an amount would fall far short of the $75,000 jurisdictional threshold.  Moreover, the complaint does not sufficiently plead facts demonstrating how the filing of the original complaint adversely impacted Plaintiff, if it did so at all, and what compensatory damages she would be due

in light of Defendant's action. Put simply, there are no allegations in the complaint that show a reasonable probability that the amount in controversy exceeds $75,000.

Finally, while Plaintiff's claim for punitive damages is properly considered when determining the amount in controversy, such damages are examined with "closer scrutiny." *Leskinen v. Halsey*, 571 F. App'x 36, 39 n. 3 (2d Cir. 2014). Under Connecticut law, a plaintiff can recover punitive damages for both defamation and fraudulent misrepresentation causes of action. *See Gambardella v. Apple Health Care*, Inc., 969 A.2d 736, 748 (Conn. 2009) (defamation); *Whitaker v. Taylor,* 916 A.2d 834, 842 (Conn. 2007) (fraudulent misrepresentation). As both claims are common law claims, however, any punitive damages would be limited by "the longstanding rule in Connecticut []that common law punitive damages are limited to a party's litigation expenses less taxable costs." *Ensign Yachts, Inc. v. Arrigoni*, No. 3:09-CV-209 VLB, 2012 WL 4372002, at *2 (D. Conn. Sept. 24, 2012). Given that Plaintiff's punitive damages would necessarily be limited to the attorney's fees expended in prosecuting this action, and that Plaintiff has not alleged any information about the extent of such fees, the Court is unable to conclude that such costs would bring the amount in controversy above $75,000.

Thus, while the Court is mindful that the Second Circuit is wary of *sua sponte* dismissals, such dismissals are permitted when it is "unmistakably clear" that the court lacks subject matter jurisdiction. *Catzin v. Thank You & Good Luck Corp*., 899 F.3d 77, 83 (2d Cir. 2018). That is the case here, for the reasons explained above. This is not to say, however, that there are no facts that could be pleaded that would meet the jurisdictional threshold. Thus, the Court will follow the Second Circuit's command that "the court must afford the plaintiff an appropriate and reasonable opportunity to show good faith in believing that a recovery in excess of [the jurisdictional amount] is reasonably possible," *Chase Manhattan Bank, N.A. v. Am. Nat. Bank & Tr. Co. of Chicago*, 93

6

F.3d 1064, 1070 (2d Cir. 1996), by allowing the Plaintiff an opportunity to amend her complaint. *See Siddiqui*, 2018 WL 6519064, at *13 (granting leave to amend to allege recovery in excess of $75,000 was reasonably possible). While the Court lacks jurisdiction to address Defendant's Rule 12(b)(6) motion, Plaintiff will be permitted to rectify not only the jurisdictional issue, but also any other pleading defects, in any amended complaint.

### III. CONCLUSION

For the foregoing reasons, the instant case is DISMISSED *sua sponte* for lack of subject matter jurisdiction. Defendant's Motion to Dismiss is DENIED as moot. Plaintiff must file any amended complaint on or before **October 14, 2022.** If no amended complaint is filed by Plaintiff on or before that date, the Clerk of Court is directed to enter judgment in favor of Defendant and close this action.

**SO ORDERED** at Hartford, Connecticut, this 23 day of September, 2022.

　　　　　　　　　　　　　　　　　　　　　 */s/ Sarala V. Nagala*
　　　　　　　　　　　　　　　　　　　　　　SARALA V. NAGALA
　　　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE